# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DONNA MARIE ANDREWS,**

**Plaintiff,**

-vs-                                                           **Case No.  6:11-cv-898-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

# MEMORANDUM OF DECISION

Donna Marie Andrews (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits.  Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed and remanded for an award of benefits or for further proceedings because the Administrative Law Judge (the "ALJ") erred in the following respects: 1) the ALJ's residual functional capacity assessment ("RFC") is not supported by substantial evidence; 2) the ALJ's credibility determination is not supported by substantial evidence; and 3) the ALJ's hypothetical question to the vocational expert (the "VE") failed to include all of Claimant's limitations. Doc. No. 22 at 2-3, 8-15.  For the reasons set forth more fully below, the final decision of the Commissioner is **REVERSED and REMANDED** for further proceedings because the ALJ's RFC assessment and credibility determination are not supported by substantial evidence.

## I.    BACKGROUND.

On June 21, 2007, Claimant filed an application for benefits alleging an onset of

disability as of April 1, 2007.  R. 127-40.  Claimant alleges disability due to severe obstructive sleep apnea with Bi-level Positive Airways Pressure ("BiPAP") and oxygen use, difficulty breathing and shortness of breath upon exertion, morbid obesity, diabetes type-2, knee and joint pain, and fatigue.  R. 167.  Claimant's application was denied initially and upon reconsideration based upon the opinions of non-examining physicians, Drs. Jeffrey Boyer and Stephen Burge.  R. 75-80, 338-45, 360-67.  The relevant medical record is set forth below.

**A.  Medical Record.**

On September 15, 2000, after conducting a sleep study, Dr. Daniel T. Layish diagnosed Claimant with "[e]xtremely severe (life threatening) obstructive sleep apnea/hypopnea syndrome which is associated with life threatening oxy-hemoglobin desaturation. . . ." R. 240.[1]  Claimant's total lung capacity [was] only 56%, which was consistent with "moderate restrictive ventilatory defect."  R. 395.   After adding supplemental oxygen of 3 liters, Claimant's saturation levels improved.  R. 240.   Dr. Layish placed Claimant on 24-hour supplemental oxygen.  R. 390.  Physical examination at the time revealed that Claimant's lungs were clear with no evidence of infiltrate.  R. 242.

On January 17, 2001, Dr. Layish reported that Claimant suffers from: severe obstructive sleep apnea; exogenous obesity; obesity hypoventilation syndrome ("OHS"); restrictive ventilatory defect with total lung capacity of 57%; exertional dyspnea; hypertension; and restless leg syndrome.  R. 390.[2]  Claimant stated that she is not using oxygen during the daytime "except

---

[1] Hypopnea is "[a]bnormally slow and shallow breathing."  *The American Heritage Dictionary*, Second College Ed. p. 634 (1985).

[2] Dyspnea is shortness of breath. *Stedman's Medical Dictionary*, 26th Ed. p. 535 (1995).  Obesity hypoventilation syndrome "is a condition in obese people in which poor breathing leads to lower oxygen and higher carbon dioxide levels in the blood."  *See* U.S. National Library of Medicine, National Institutes of Health, http://www.nlm.nih.gov/medineplus/ency/article/000085.htm.

when she is at home and when she is asleep." R. 390. Physical examination revealed that Claimant's lungs were clear and her oxygen saturation levels averaged 99% while on two liters of oxygen. R. 391. With exercise, Claimant's saturation levels fell to 85%. Dr. Layish noted that Claimant had improved and recommended that she use oxygen only with exercise and sleep. R. 391.

On February 1, 2001, Claimant was treated by Dr. Duggal, who noted that Claimant is "home O2 dependent," and her chief complaint is "shortness of breath and feels she gets shortness of breath walking around the house." R. 252. Physical examination revealed that Claimant's lungs were clear to auscultation. R. 252. Dr. Duggal diagnosed Claimant with "shortness of breath on mild exertion," sleep apnea, hypertension, and hypercholesterolemia. On April 23, 2001, Dr. Duggal's treatment notes show that Claimant "continues to have exertional and non-exertional chest pains and she becomes very short of breath on mild exertion." R. 250.

On May 2, 2001, Claimant underwent a psychological consultative examination with Dr. Fleischmann, Ph.D. R. 245-47. Dr. Fleischmann stated that Claimant was currently using oxygen and "did have an oxygen supply with her, tubes in her nose to administer the oxygen, and oxygen dosages could be heard in the form of a pump about every two seconds." R. 246. Dr. Fleischmann noted that Claimant's complaints are "primarily fatigue and respiratory dysfunction." R. 246.

On September 19, 2001, Dr. L.K. Daryanani prescribed "lifetime" oxygen therapy, stating that Claimant requires portable oxygen with continuous flowing oxygen. R. 275. On October 23, 2001, Dr. Shahid examined Claimant stating that she has had moderate success with a BiPAP, but Claimant "continues to have dyspnea on . . . mild exertion." R. 279. The record

contains no other medical records until 2007.

On June 1, 2007, a CT scan of the lungs showed "multifocal alveolar infiltrates," and a chest x-ray showed that "lung fields are poorly inflated."  R. 302, 308.  Claimant's lungs were hypoxemic, requiring an oxygen mask.  R. 315. Physicians at Florida Hospital diagnosed Claimant with cardiomegaly and bilateral patchy infiltrates.  R. 308.  On June 3, 2007, Claimant's lungs were "grossly clear."  R. 309.

On September 5, 2007, Claimant presented to Dr. Sam Ranganathan for a consultative physical examination with respect to Claimant's disability application.  R. 335-36.  Dr. Ranganathan noted that Claimant was diagnosed with sleep apnea syndrome in 2000 and was using a BiPAP machine with oxygen, but still complains of day time sleepiness.  R. 335.  Physical examination revealed that Claimant experiences dyspnea with "minimal exertion."  R. 336.

On September 20, 2007, Dr. Jeffrey Boyer provided a non-examining RFC opinion based upon a medical records review.  R. 338-45.  Dr. Boyer opined that Claimant has a primary diagnosis of cardiomegaly and a secondary diagnosis of diabetes mellitus.  R. 338.  Dr. Boyer opined that Claimant can occasionally lift/carry 20 pounds and frequently 10 pounds, stand and/or walk and sit about 6 hours in an 8-hour workday, and push or pull without limitations.  R. 339.  Dr. Boyer noted that claimant experiences dyspnea with "minimal exertion."  R. 340.  Dr. Boyer opined that Claimant has no other limitations and her symptoms are disproportionate to the objective medical record.  R. 343.

On February 8, 2008, Dr. Stephen Burge provided a non-examining RFC opinion based upon a medical records review.  R. 360-67.  Dr. Burge opined that Claimant has a primary

diagnosis of diabetes and a secondary diagnosis of obstructive sleep apnea.  R. 360.  Dr. Burge

opined that Claimant can occasionally lift 50 pounds and frequently lift 25 pounds, stand and/or

walk and sit about 6 hours in an 8-hour workday, and push or pull without limitations.  R. 361.

Dr. Burge noted that Claimant has obstructive sleep apnea and uses a Continuous Airway

Pressure ("CPAP") device at bedtime. R. 361.  Dr. Burge opined that Claimant has no other

limitations.

On February 26, 2008, Claimant presented to Dr. Syed Mobin.  R. 382.  Physical

examination showed that after a six minute walk, Claimant's oxygen saturation levels decreased

to 85%.  R. 383.  Claimant was given two liters of oxygen and her oxygen saturation level

returned to 95%.  R. 383.  Claimant's lungs were clear to auscultation. R. 383.  Dr. Mobin

diagnosed Claimant with severe obstructive sleep apnea, periodic limb movement disorder, and

chronic dyspnea, but stated that "[i]t is mostly related to obesity and obesity hypoventilation

syndrome."  R. 382, 402.  Dr. Mobin recommended that Claimant continue BiPAP therapy and

use 2 liters of oxygen with "activity."  R. 383.

On March 17, 2008, Dr. Linus A. Wodi diagnosed Claimant with dyspnea stating that she

is currently taking oxygen.  R. 430.  On May 8, 2008, Dr. Mobin reported that Claimant's was

sleeping better and reports that she is "clinically stable."  R. 398.  Dr. Mobin diagnosed

hyperactive airways, sleep apnea and periodic limb movement syndrome.  R. 398.  On June 4th,

July 9th and October 1, 2008, in handwritten treatment notes, Claimant was diagnosed with

chronic obstructive pulmonary disease ("COPD").  R. 413-15.  On September 9, 2009, Dr.

Sandra Laurencin's treatment notes state that Claimant needs oxygen at night and with activity.

R. 439.  Dr. Laurencin also noted that Claimant's oxygen saturation levels were 98% before

walking and 95% after walking.   R. 439.   On November 17, 2009, Dr. Laurencin diagnosed Claimant with "intermittent shortness of breath" and sleep apnea.  R. 435.

### B.  Proceedings Before the ALJ.

Claimant requested a hearing before an ALJ and, on December 7, 2009, a hearing was held before ALJ Pamela Houston.   R. 30-74.   Claimant and VE Joyce Ryan were the only persons to testify. R. 30-74.  Claimant appeared at the hearing with a portable oxygen tank.  R. 42.  Claimant testified that she has been using oxygen therapy since 2000 and, after she stopped working in 2007, she has used a portable oxygen tank for 18 to 20 hours per day.  R. 41-42. Claimant testified that she uses oxygen because she gets too tired anytime she does anything without it.  R. 42.  Claimant also stated that she uses oxygen due to her difficulty breathing and fatigue.  R. 42-44.  Claimant said her trouble breathing is the greatest impairment that keeps her from working.  R. 47.  Claimant stated that she can walk half a block before she loses her breath. R. 48.

The ALJ posed the following hypothetical question to the VE:

> If you could assume for me a hypothetical individual who could lift and carry 20 pounds occasionally, 10 pounds frequently, sit, stand and walk six out of eight hours with normal breaks; no concentrated exposure to fumes, gasses, odors, or other pollutants or irritants, okay, could such an individual perform any of the prior work of the [C]laimant. . . .?

R. 69.  The VE testified that such an individual could not perform Claimant's past relevant work, but could perform light exertional work as a ticket seller, general cashier, and assembler of small products.  R. 70.   The ALJ then asked the VE whether an individual who required the use of an oxygen tank at least six hours out of an 8 hour day could perform any work, and the VE responded that there was no work such an individual could perform.  R. 72-73.

On January 27, 2010, the ALJ issued a decision finding Claimant not disabled.  R. 14-24. The ALJ found that Claimant suffers from the following severe impairments: obesity hypoventilation syndrome, associated with sleep apnea; non-insulin dependent diabetes mellitus – Type II; knee pain; varicose veins; and obesity.  R. 16.  The ALJ determined that Claimant retains the RFC for light work except that Claimant cannot have any concentrated exposure to fumes, gases, odors, or other pollutants or irritants.  R. 18.

In reaching the RFC determination, the ALJ stated that Claimant "alleges not being able to work because of constant shortness of breath and fatigue, which requires her to use an oxygen tank at all times."  R. 19.  The ALJ did not directly address Claimant's use of oxygen, but found that Claimant's "allegations of shortness of breath and fatigue and its resulting limitations are not supported by the weight of the evidence."  R. 19.  Thus, the ALJ found Claimant's allegations of shortness of breath and fatigue not credible.

In support of that finding, the ALJ stated:

> Medical records from September 2000 . . . indicate that the [C]laimant was evaluated for obstructive sleep apnea and exertional dyspnea.  An examination was positive for exertional dyspnea as she had intermittent wheezing.  Dr. Daniel T. Layish noted that although pulmonary function tests revealed no evidence of any obstructive ventilatory defect or small airway dysfunction, the [C]laimant's obstructive sleep apnea was related to her obesity with clinical findings of *cor pulmonale* and obesity hypoventilation syndrome.  He further noted that based on an arterial blood gas test at the time, she was started on oxygen 24 hours a day, but particularly during sleep and with exercise.  He concluded that her restrictive ventilatory defect was likely related to her obesity.
>
> At a follow-up appointment four months later, Dr. Layish noted that the [C]laimant had lost weight, was using her oxygen only during nighttime, and that the [C]laimant stated she felt better during the daytime.  Physical examination revealed that her chest was clear to percussion and excursion without wheezes or rhonchi.

He added that the [C]laimant's condition seemed to have improved with decrease in pCO2 levels and improved oxygenation, and recommended that she cut down her oxygen use to only with exercise and sleep.

Subsequently, the [C]laimant was seen in consultation again in February 2008, where it was noted that her dyspnea on exertion and activity was mostly related to obesity and obesity hypoventilation syndrome. Examination showed that she was comfortable and in no respiratory distress and her chest was clear to auscultation, with only decreased breath sounds in the lung bases. Chest x-rays revealed no focal infiltrate or consolidation and the costophrenic angle seemed clear, and pulmonary function test results were consistent with moderate ventilatory limitations due to restriction, mostly because of her obesity, because her diffusion capacity was normal. Thereafter the [C]laimant was sent for a new sleep study and upon follow-up, she was found to have normal respiratory effort and equal chest expansion and good respiratory effort with only mild bilaterally expiratory wheezing, which was possibly due to an episode of bronchitis. Although her sleep study showed recurrent obstructive sleep apnea, requiring the continuous use of a CPA machine, her physician noted that the [C]laimant was clinically stable and started her on new medication. A month later, the [C]laimant expressed sleeping better and feeling more rested with the new medication. She was again advised about the implications of weight loss.

Moreover, a chest x-ray taken in June 2007 . . . indicates that her lungs were grossly clear and she had only a mild pulmonary venous congestion. Also in 2007, the [C]laimant was evaluated during a physical consultative examination at the request of the state agency's department of disability determination. Dr. Sam Ranganathan's examination revealed that the [C]laimant had dyspnea on minimal exertion. However, he noted that she exhibited no chest rales or rhonchi and that she was able to walk without assistive devices, could do tandem walk and heel walking, could get on and off the examination table, was able to take off her shoes, sat on the examination room and in waiting area, and walked down the hall.

More recently, the [C]laimant was examined . . . after undergoing a heart catheterization due to an abnormal myocardial perfusion study. The heart cath showed angiographically normal coronary vessels with left dominant system and normal LV systolic function.

-8-

> The diagnostic impression included dyspnea . . . as well as obesity and sleep apnea.  Furthermore, recently the [C]laimant was seen by Dr. Sandra B. Laurencin complaining of shortness of breath and in distress because she was unable to see her pulmonary specialist to reauthorize her oxygen.  However, Dr. Laurencin noted during examination that the [C]laimant's lungs were clear to auscultation bilaterally and her oxygen saturation level was at 98% before walking and 95% after walking.

R. 19-20.    Based on the forgoing, the ALJ found Claimant's allegations of shortness of breath and fatigue not credible.  R. 19-20.

As for the opinion evidence, the ALJ stated that she gave "greater weight" to the opinions of non-examining physicians Drs. Boyer and Burge, which indicated that Claimant could perform light exertional work.  R. 21.  The ALJ concluded that the RFC assessment is supported by the medical records of Drs. Layish, Mobin, Laurencin, Cohen, and Ranganathan.  R. 21-22. Based on the RFC and the testimony of the VE, the ALJ found that Claimant can perform work as a ticket seller, general cashier, and assembler of small products.  Thus, the ALJ found that Claimant is not disabled.

## II.    THE ISSUES.

Claimant raises three closely related issues on appeal.  Doc. No. 22 at 8-15.  Claimant argues that the ALJ's RFC and negative credibility finding as to Claimant's allegations of shortness of breath and fatigue are not supported by substantial evidence because they ignore the multiple diagnoses of dyspnea and Claimant's prescriptions for oxygen.  Doc. No. 22 at 10-11, 14-15.  Essentially, Claimant maintains that the record contains overwhelming evidence that Claimant suffers from shortness of breath on minimal exertion and requires the use of oxygen. Doc. No. 22 at 10-11, 14-15.  Thus, Claimant contends that the RFC and credibility finding are

not supported by substantial evidence.[3]

The Commissioner maintains that Claimant has failed to show the medical evidence regarding Claimant's use of oxygen is inconsistent with the ALJ's RFC.  Doc. No. 23 at 6.  The Commissioner argues that the medical records indicate that Claimant needs oxygen only at night and with activity, and Claimant "failed to show how this would prevent her from performing work consistent with the ALJ's RFC determination."  Doc. No. 23 at 6.  Moreover, while the Commissioner agrees that Claimant has "experienced dyspnea (shortness of breath) on minimal exertion . . . [that is not] proof that [Claimant] requires an oxygen tank, even on a limited or occasionally [sic] basis."  Doc. No. 23 at 6.  Thus, despite acknowledging that the medical record shows Claimant suffers from shortness of breath, the Commissioner maintains that the "ALJ correctly found that [Claimant's] allegations of shortness of breath and fatigue and their resulting limitations were not supported by the evidence."  Doc. No. 23 at 10.  Accordingly, the Commissioner requests that the final decision be affirmed.  Doc. No. 23 at 11.

## III.   LEGAL STANDARDS.

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At

---

[3] Based on those alleged errors, Claimant also argues that the ALJ's hypothetical question to the VE failed to include all of Claimant's limitations.  Doc. No. 22 at 11-13.

step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## B.    THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560;

-11-

*accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C.    REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it

is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).   A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982).   The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098.   Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[4]

## IV.   ANALYSIS.

As set forth above, the medical record shows that Claimant has repeatedly been diagnosed with dyspnea, which is shortness of breath, even on minimal exertion, obesity hypoventilation syndrome, which is a condition resulting in poor breathing and oxygen levels, and has been prescribed portable oxygen to be used with activity and at night for life. *See* R. 240, 250-52, 275, 279, 302, 308, 315, 336, 340, 382-83, 390-91, 430, 435, 439.   Thus, the medical record unequivocally establishes that since 2007, Claimant has dyspnea upon minimal/mild activity (R. 279, 336, 340) and needed oxygen with activity (R. 383, 439).   In her

---

[4] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).   After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

decision, at step-two, the ALJ specifically found that Claimant suffers from a severe impairment of obesity hypoventilation syndrome. R. 16. However, without specifically addressing Claimant's use of oxygen, in determining the RFC and the Claimant's credibility, the ALJ found that the Claimant's "allegations of shortness of breath and fatigue and its resulting limitations are not supported by the weight of the evidence." R. 19.

The ALJ's stated reasons for rejecting Claimant's allegations of shortness of breath are also inconsistent. The ALJ notes that Claimant was diagnosed with dyspnea upon minimal exertion by multiple physicians after they conducted physical examinations. R. 19-20. The ALJ correctly states that physical examinations and x-rays also showed that Claimant's lungs were clear to auscultation and various physicians opined that Claimant's dyspnea was mostly related to her obesity and obesity hypoventilation syndrome. R. 19-20. Irrespective of the cause of Claimant's dyspnea, the ALJ fails to explain what record evidence renders her allegations of shortness of breath not credible. R. 19-20.[5] Indeed, as the ALJ noted, even Dr. Ranganathan, the state agency consultative physician, opined that Claimant suffers from dyspnea on minimal exertion. R. 20. This inconsistency is critical to overall decision because of the VE's testimony, which provides that there is no work than an individual who requires oxygen for 6 hours in an 8-hour work day can perform. Because the ALJ failed to make any specific findings regarding Claimant oxygen use, it is unclear whether the ALJ also rejected Claimant's allegations that she needs oxygen with activity. *See generally Quinn v. Sullivan*, 1993 WL 293004 at *2-7 (N.D. Ga. Feb. 19, 1993) (reversing in part because medical record supported Claimant subjective

---

[5] The ALJ correctly notes that on one examination Dr. Laurencin indicated that Claimant's oxygen level was at 98% before walking and decreased to 95% after walking, which is not a significant decrease, but that is only a scintilla of evidence supporting the ALJ's rejection of Claimant's allegations. R. 20. Thus, Dr. Laurencin's notation is not substantial evidence. *See Foote v. Chater*, 67 F.3d at 1560 (holding that substantial evidence is more than a scintilla).

limitations due to requiring daily breathing treatments and supplemental oxygen). In short, the ALJ's RFC assessment and credibility determination are inconsistent with the medical record and they lack substantial evidentiary support.[6]

The Claimant requests that the Court reverse for an award of benefits. Doc. No. 22 at 15. The Court may only reverse for an award of benefits where it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis*, 985 F.2d at 534. In making such a determination, the Court is mindful that it "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In this case, while the ALJ's stated reasons for rejecting the Claimant's allegations of shortness of breath and fatigue are not supported by substantial evidence, the cumulative effect of the evidence does not establish disability without any doubt. Accordingly, the Court finds that the case should be remanded to the Commissioner for further proceedings.

## V.    CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1.    The final decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of Section 405(g) for further proceedings;

2.    The Clerk is directed to enter judgment in favor of Claimant and to close the case.

**DONE and ORDERED** in Orlando, Florida on September 19, 2012.

---

[6] The ALJ also gave "greater weight" to the opinions of Drs. Boyer and Burge, which the ALJ characterizes as having found that Claimant can perform light exertional work. R. 21. Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567(b). The Court notes that Drs. Boyer and Burges opined that Claimant suffers from different primary and secondary diagnoses, and that Dr. Burges opined that Claimant can perform medium exertional work, which includes lifting 50 pounds occasionally and 25 pounds frequently. R. 21, 338-45, 360-67. *See also* 20 CFR § 404.1567(c). In the decision, the ALJ does not reconcile the differences between the two opinions or explain why the ALJ gave both of these materially different opinions "greater weight." R. 21.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate, Esq.
Law Offices of Shea A. Fugate.
P.O. Box 940989
Maitland, FL 32794


John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
John C. Stoner, Branch Chief
Dana L. Myers, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Pamela Houston
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing OFC
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801